LESTER CRIST AND ANOTHER v. MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY COMPANY.[1]

January 30, 1925.

No. 24,185.

**Railway company liable for defect in approach to highway bridge.**

A railway company built a bridge over its right of way in 1911 and then graded the highway up to the bridge as approaches thereto. The town then took care of the highway and maintained it up to the bridge which extended from 5 to 7 feet outside the right of way. In 1917 the company, at the request of the road commissioner, lowered the west end of the bridge 2.7 feet to lessen the grade of the highway to the bridge, and the town fixed the approach to the bridge. The town authorities cared for the road until 1918, when it was made a part of a state highway and since then it has been maintained by the state under the immediate care of a patrolman. A defect, in the nature of a hole, existed in the highway at the westerly end of the bridge immediately next to the plank which was about 6 inches above the bottom of the hole. The highway entered the west end of the bridge at an angle of 50 degrees. Plaintiffs drove a Ford car onto the westerly end of the bridge at about 15 miles per hour, struck the defect, causing the driver to lose control of the car which some 40 feet along the bridge went through the northerly railing and to the ground below causing the injuries complained of.

[1]Reported in 202 N. W. 57.

*Held*:

(1) The claim that plaintiffs were guilty of contributory negligence was a question for the jury.

(2) That 2 Wisconsin St. 1921, § 1836, p. 1542, had no application to a separated crossing.

(3) It is the continuing duty of the company to maintain the bridge and the approaches thereto.

(4) The fact that the public officials maintain the highway (approaches) does not excuse the company from liability for the failure of the performance of such duty.

(5) The public officials were powerless to relieve the company from duty, by contract or otherwise.

(6) That the evidence supports a finding by the jury that a defect existed, and that it existed for a sufficient length of time to charge defendant with notice, and that it was the proximate cause of plaintiff's injuries.

(7) That there is no error in the court's instructions to the jury.

Two actions in the district court for Ramsey county, one by Lester Crist and the other by George Dubois. The cases were tried together before Bechhoefer, J., and a jury which returned a verdict for $2,500 in favor of George Dubois and for $450 in favor of Lester Crist. From an order denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

*John E. Palmer* and *John L. Erdall*, for appellant.

*Samuel A. Anderson*, for respondents.

WILSON, C. J.

Plaintiff George Dubois owned a Ford car. His brother-in-law, Lester Crist, operated the car while Dubois was riding with him. Each brought a separate action against defendant involving the same accident as well as the same questions of fact and law. By stipulation they were consolidated and tried together. It was stipulated upon the trial that the defense of contributory negligence, if established by the evidence, applied equally to the case of each plaintiff, and if the jury should find, or the court should hold, that Crist was guilty of contributory negligence, such negli-

gence would be attributable to Dubois, even though Dubois was himself not negligent. Each plaintiff was given a verdict. Defendant appeals from an order denying its alternative motion for judgment or for a new trial in each case.

Plaintiffs were traveling south on Wisconsin State Highway No. 35 when their car crashed through the railing of a bridge across defendant's right of way about 2 miles north of Frederic, Wisconsin, destroying the car and injuring both plaintiffs.

Defendant on this appeal asserts that it was not negligent; that the alleged defect did not exist for a sufficient length of time to charge defendant with notice; that plaintiffs were guilty of contributory negligence as a matter of law; that the alleged defective condition in the approach to the bridge was not the proximate cause, and that there was error in the charge to the jury.

Plaintiffs' proofs tended to show: That the highway makes a 50-degree curve to the east as it enters upon the bridge which stood practically east and west; that immediately at the west end of the bridge the traffic had worn the gravel and dirt away so that the bridge had a "square jump up of about six inches up onto the bridge;" that the driver approached at about 15 miles per hour. The plank of the bridge had this 6-inch elevation and the driver testified:

"I didn't see this until we was right to it, I throwed it in neutral—you do that with your foot, and when we struck it why, it gave her a bound and throwed my foot off of neutral and that throwed it back into high again, and then she swung to the right and I swung it back to the left, and I went to straighten it up and I couldn't do it, something had gone wrong, I don't know what it was, and by that time, by the time I found out that there was something had gone wrong with it, we were right close to the other side of the bridge * * * the left side. And then I only had about four or five to six feet, something like that, to stop in and I throwed it in neutral and throwed on the brake, but I was too close, and she went down off over the side of the bridge * * * something was wrong there that we couldn't steer it."

The evidence shows that the bump was on the left hand side as cars approach the bridge and that the "hole" was in the left hand track and that the plank in the right hand track was up only about from 2 to 3 inches. The "hole" in the left hand track was there "off and on for two years that wasn't good there." One witness testified that the patrolman put sand in the hole occasionally and that would last probably for half an hour when cars were present in large numbers. He gave his judgment that the hole was caused by the cars hitting the bridge on a swing and throwing the dirt out. The approach was on a curve so that the left wheel met the plank ahead of the right wheel. Several hundred cars travel this road daily. The bridge is 112 feet long. It projects at the west end 7.2 feet off of the right of way and at the east end 5.3 feet. The bridge itself was good, strong and substantial and in all things suitable for a bridge. It was built in 1911 by defendant at which time defendant graded the highway up to the bridge. Then the town took care of the highway and defendant did nothing about the highway thereafter. In 1917 the highway was made a county road. In that year defendant, at the request of the road commissioner of the town, lowered the west end of the bridge 2.7 feet to lessen the grade of the highway. When the bridge was lowered the town fixed the approach. The town authorities cared for the highway until 1918 when it was made a state highway and since then it has been maintained by a state patrolman whose duty was to keep filled all depressions, keep all loose and bad places in condition so that the public can travel in safety and to maintain the road to the best of his ability. He has team, wagon, grader and the usual hand tools.

Defendant's claim that plaintiffs were guilty of contributory negligence as a matter of law cannot be sustained. There are many facts and circumstances that might have justified the jury in finding that plaintiffs were guilty of negligence, but the jury declined to so find. The physical facts supported this claim, but there was evidence sufficient to sustain a finding either way. An extended discussion of the evidence is useless.

The interesting question in this case is the one of defendant's liability for maintenance of the approach to the bridge.

Plaintiffs pleaded and proved section 1836 of Wisconsin Statute 1921, found in Volume 2, p. 1542, and alleged that defendant's violation of this statute caused the injuries. It is doubtful if the language of the statute can be construed to meet plaintiffs' necessities in this case. But, aside from that, this statute has no application to a separated crossing. The statute is an old one and was passed at a time when the separation of crossings was little thought of, if at all. The scheme of separate crossings has subsequently developed incident to increased population, activities, commercial growth, heavy traffic, automobile transportation, all multiplying crossing dangers. This has been met by appropriate legislation dealing directly with separate crossings. Section 1836 has reference exclusively to the ordinary grade crossing. Application of Kaiser, 171 Wis. 40, 174 N. W. 714, 176 N. W. 781. This statute is out of the case, and we must look to the common law to learn the duty of defendant under the circumstances.

Lord Coke has said of a bridge and the adjacent highway that "one of them as it were depending upon the other." [2 Coke's Inst. p. 705.] At common law the charge of repairing the highways at the end of a bridge was considered as belonging prima facie to the party charged with the repair of the bridge itself. The King v. The West Riding of York, 7 East, 588, 598. In recognition of this duty at common law some difficulty was apparently experienced to determine just where the approaches to a bridge began and the highway commenced, and, to eliminate such confusion, St. 22 Henry VIII, c. 5, was passed in 1530, requiring the person charged with the maintenance of the bridge to repair that portion of the highway (approaches) which lies next adjoining to any ends of bridges distant from the said ends by the space of 300 feet. This reduced to a more convenient certainty what should in all cases thereafter be considered the extent and charge upon the owner of the bridge. Com. v. Inhabitants of Deerfield, 6 Allen (Mass.) 449; Whitcher v. City of Somerville, 138 Mass. 454.

In State v. St. P. M. & M. Ry. Co. 35 Minn. 131, 28 N. W. 3, 59 Am. Rep. 313, the common law rule was followed and it was held that where the railroad builds a bridge across a highway its duty required the company to do whatever was necessary to be done to restore the highway which included, in case of a bridge, the approaches without which the bridge would be useless.

This duty is founded upon the equitable principle that it was .its act done in pursuit of its own advantage, which rendered this work necessary, and therefore it, and not the public, should be burdened with its expense. The old theory was that the public got no benefit from traveling over a bridge instead of a solid highway. The King v. Kerrison, 3 Maule & S. 526; The King v. Inhabitants of Lindsey, 14 East, 317. Theoretically they must have assumed that safety existed without the bridge. The principle, however, arose out of bridges over streams that could be forded on solid bottom. The separated crossing in railway service was then unknown. There are fundamental principles, however, that remain applicable and in the absence of statute must control. Up to the present time we have not adopted the limitation.

We have followed the principle that the company should stand the expense of an overhead bridge because it is for its benefit. State v. G. N. Ry. Co. 136 Minn. 164, 161 N. W. 506; City of St. Paul v. G. N. Ry. Co. 145 Minn. 355, 177 N. W. 492.

It is its uncompensated duty. State v. St. P. M. & M. Ry. Co. 98 Minn. 380, 108 N. W. 261, 28 L. R. A. (n. s.) 298, 120 Am. St. 581, 8 Ann. Cas. 1047. The duty includes the approaches and is a continuing one which means that it carries with it the duty of maintenance of the bridge and its approaches. Com. v. Inhabitants of Deerfield, 6 Allen (Mass.) 449; Whitcher v. Somerville, 138 Mass. 454; State v. St. P. M. & M. Ry. Co. 35 Minn. 131, 28 N. W. 3, 59 Am. Rep. 313; Board of Co. Commrs. v. Duluth R. W. & S. R. Co. 67 Minn. 213, 69 N. W. 898; State v. G. N. Ry. Co. 136 Minn. 164, 161 N. W. 506.

From the legal duty of maintenance of the approach (in which the defect existed) to this bridge the defendant seeks to be excused, because of the acts of the town officials and the state officials which

amounted to their "taking over" the care and maintenance of the approach as a part of the general highway system. The fact that the public officials assumed that it was their duty to care for and maintain the highway up to the end of the bridge or, rather, that they in fact did so care for and maintain the approach as a part of the highway, is clearly established. The trial court instructed the jury that such fact was immaterial. This was correct. Such fact could not relieve defendant of the legal liability resting upon it. It does not appear that defendant did any more than to acquiesce in the public officials doing that which the defendant should have done. The highway officials, whether town or state, did not have the power by contract or otherwise to make the defendant immune from claims for damages resulting to claimants from a negligent failure to do that which the law commanded. From the liability resulting from a nonperformance of this uncompensated duty there is no escape. It is definite, certain and imperative.

The evidence supports a finding by the jury that a defect existed. It is claimed that, if one did exist, it did not exist for a sufficient length of time to charge the defendant with notice. The evidence tends to show that it existed "off and on for two years." Dr. Hall testified: "There has always been a hole on the approach of the west side of the bridge." Albert Anderson testified: "I know there was always a bump there on the left-hand side, more or less, sometimes more and then again it was less." It was apparently filled by the patrolman from time to time as the traffic opened it up. Upon such a record the question of notice was peculiarly one for the jury and the court properly submitted it to the jury.

Was the defect the proximate cause of the plaintiffs' injuries? Defendant says it was not. It asks us to assume the prerogative of the jury. Defendant urges that the proximate cause of the injury was the loss of the control of the car due to high speed. But the finding of the jury has determined that high speed did not exist. A defect is present. It deflects a Ford car. It upsets the equilibrium of the driver. This causes his foot to slip from the clutch. In the confusion thus started the accident happens. Was not the defect the direct and immediate cause? Under the circum-

stances this inquiry was a practical question to be determined by the jury in the exercise of their practical common sense. We have their composite judgment in answer to this question as manifested by their verdict. If defendant's counsel had a finding of the jury that the excessive speed, in fact, existed, he would then have some foundation as to what the proximate cause was, but as it is the assertion is without support.

It is claimed that the charge of the court to the jury was erroneous in that it took from defendant the benefit of the testimony of the plaintiffs in establishing contributory negligence. The criticism of the charge is without merit. It clearly instructed the jury as to contributory negligence and properly placed the burden thereof on the defendant. There are other assignments of error as to the charge, a part of which have been covered and disposed of by our general discussion. The charge as a whole was a very excellent one, and contained a clear statement of the law applicable and was directly to the point.

Affirmed.

STONE, J. (dissenting.)

My concurrence is withheld because of serious doubt and consequent hesitation concerning one phase. The charge of negligence is not put upon a defect of construction but one of inspection and maintenance. And there lies the difficulty, for the primary duty of inspecting and maintaining a modern trunk highway is assumed by the state—to the exclusion of all local and private authority. That is no denial of the duty of railways to keep in repair or reconstruct as necessary or as required by proper governmental authority. The point is that the modern law of state maintained highways places the *primary* duty of inspection and maintenance on the state. It is enough that the railway must repair or reconstruct when called upon. It is too much, at least as a matter of common sense and sound economy, and another useless and expensive duplication of effort for which in the end the people must pay, for the law to leave upon the railroad any duty of inspection and any primary duty of maintenance, when the state, as the sovereign,

has assumed the whole duty of inspection and the primary duty of maintenance, leaving the railway only the secondary duty to repair or reconstruct when so ordered by competent government authority.

Here the alleged cause of the accident was a fault of inspection. And, if the accident had occurred in Minnesota, our decision would be an admission by government of an injustice, a confession that it was imposing upon private means the result of its own wrongdoing, in that it has taken over the whole duty of inspection but still insists that for a neglect of that duty those from whom it has been taken must remain liable, a result both incongruous and unjust.

But at that, and although the law of this decision may seem to lag a bit behind the recent changes in highway law control, the task of bringing it up to date may be one for legislation rather than adjudication.

QUINN, J. (dissenting.)
I agree with Mr. Justice Stone in the reasoning above set forth.