ALABAMA & VICKSBURG RAILWAY CO. *v.* ANNA M. ODENEAL.

1. RAILROADS. *Purchasers of same. New company. How affected by existing laws. Farm crossings. Acts* 1882, *p.* 47; *Acts* 1884, *p.* 42.

   When the purchasers at foreclosure sale of railway property and franchises organize a new company under authority of the general statute, an existing law in relation to farm crossings is to be taken as integrated into its charter.

2. NECESSARY PLANTATION ROAD. *Words defined as used in the statute. Code* 1892, *§* 3561.

   The word "necessary," as used in the statute requiring railroad companies to make and maintain convenient and suitable crossings over their tracks for necessary plantation roads, does not mean only such roads as are indispensable, but also such as are reasonably convenient.

3. SAME.

   The word "plantation," as used in the statute, is not confined in its meaning to bodies of land devoted exclusively to agriculture, but includes as well a stock farm, a part of which only is devoted to agriculture.

4. NECESSITY OF ROAD. *Jury determines.*

   It is a question of fact for the jury to determine whether or not, in view of all the evidence, a plantation road is a necessary one for the landholder in the reasonable use and enjoyment of the property.

FROM the circuit court of the first district of Hinds county.

HON. J. B. CHRISMAN, Judge.

Judgment for plaintiff.    Defendant appeals.

This was an action brought by the appellee, as owner of the Sligo stock farm, for the penalty of $250, for which the appellant was alleged to have become liable to her under § 3561, code of 1892, by reason of its failure to make and maintain a suitable crossing over its track for the necessary plantation

road indicated in her declaration. It was admitted on the trial that the appellant railway company was organized in 1889, under the general statute of 1882, by certain persons who had become the purchasers, at foreclosure sale, of the property and franchises of the Vicksburg & Meridian Railroad Co., by which the line had been formerly owned and operated.

The evidence adduced by the plaintiff showed that the appellee acquired the farm in 1880, for stock and dairy purposes, and that the road in question had been thereafter openly, continuously, and adversely used by her until September, 1894, when the appellant took up the crossing referred to and nailed up appellee's gates; that the road was an old road, in existence prior to appellee's purchase of the property, and constituted what the witnesses term a natural crossing, the approaches to which had been put in by the appellant; that these approaches were put in in 1882, at which time the Vicksburg & Meridian Railroad Co. dug drains, which, being bridged, the appellee was thus enabled to use, and did thereafter use, the road as a wagon road, and, when the crossing got out of repair, the appellant repaired it on appellee's demand; that the farm is one of four hundred and eleven acres, a part of which is under cultivation, with barns and other buildings and improvements suitable to its character as a stock farm; that the buildings were located, the fences built, and the meadow land separated from the cultivated land with reference to this crossing; that the crossing was in daily use until closed by the appellant, and that the large herd of high grade Jersey cows in use on the place, numbering from two hundred and fifty to four hundred, at different times, had to be driven over the crossing twice every day in going to and returning from the large portion of the pasture land lying north of the railroad track, which runs through the pasture land in an easterly and westerly direction, or nearly so; that the road was also used in hauling the gathered crops from the cultivated lands to the barns, and also in hauling wood from the strip of forest land lying north of the

track; that there was another railway crossing on the farm, about one thousand feet east of the one in question, that the appellee can make use of for these purposes, but to limit her to the use.of this more easterly one would render necessary a detour of a half mile over land a considerable portion of which is cut up into drains and very rough, in order to carry the cattle to the meadows on the northern side of the track, and also involve a change in the location of the fences and the erection of gates, and be very inconvenient. A map showing the topography of the farm was also introduced by the appellee.

It was shown on behalf of the appellant that the cattle guards at the crossing were what are known as pit guards—that is to say, wooden guards with a pit underneath, and were regarded by the appellant's officers as dangerous; that in wet weather such guards cause the ground to become soft, and make rough places, which render the track liable to get out of line; that a majority of the railways of the country are dispensing with such crossings; that appellee's gates were constantly left open, and cattle being killed at the crossing, whereby the passing trains were liable to be derailed; that appellant's officers did not regard the crossing as serviceable or necessary; and that for these reasons the crossing was taken up.

The appellant introduced deeds showing that the railway company, to whose ownership it succeeded, owned the land at, and contiguous to, the crossing, in fee simple, as far back as 1835, and also a map showing the topography of the crossing. The jury were instructed, at the instance of the plaintiff, as follows:

1. In this case the jury will consider the topography of the land, the location of the buildings, and the fact, if it be a fact, that one crossing on the premises is maintained by the railroad; and if the jury believe from the evidence that the western crossing in question was the crossing of a necessary plantation road on the inclosed land of plaintiff, and that the defendant closed up the same without the consent of the plaintiff, they

will find for the plaintiff in the sum of two hundred and fifty dollars.

2. While the crossing must be over a necessary plantation road, necessary is not to be construed in the sense that the road must be absolutely essential to the use of the plantation. The jury will take into consideration the size and location of the plantation, the uses to which it is devoted, the location of the railroad, and all the other facts in evidence, in determining whether the road was a necessary one for the plaintiff in the reasonable use and enjoyment of her plantation.

3. The fact, if it be true, that cattle were killed at or about the crossing in question, is immaterial in determining whether, or not, plaintiff is entitled to recover for the act of defendant in obstructing and removing the crossing, if it was a crossing of a necessary plantation road.

The court refused several instructions asked by the defendant, but gave the following:

4. Under the second count in her declaration, the plaintiff sues for the penalty prescribed by § 3561 of the code of 1892, which requires railroad companies to make and maintain convenient and suitable crossings over its track for necessary plantation roads.  This statute does not require the defendant to make an indefinite number of crossings for any particular person, nor that the number of crossings shall be increased to suit the caprice, or promote the convenience, of any single proprietor. The crossing must be for a necessary plantation road, and the plaintiff, to recover, must show an actual necessity for the plantation road; mere convenience to her is not sufficient to sustain a claim to the penalty prescribed by the law, which is to be strictly construed.

*W. L. Nugent*, for appellant.

1. The lands are not used as a plantation, and hence the statute does not apply.   The word "plantation," as judicially defined, does not include pasture lands.   7 Conn., 201; *Atty.*

*Gen.* v. *S. B. Judges,* 38 Cal., 295: *Stone* v. *Davis,* 10 Ired., 435; *State* v. *Blythe,* 3 McCord, 363.

2. The road in question is not a necessary plantation road, or any plantation road at all. *Keimball* v. *Cocheco Railway Co.,* 27 N. H., 448; *Kansas City Railway Co.* v. *Kiezelo,* 20 Am. & Eng. Ry. Cas., 24, s.c. 32 Kan., 608; *Jones* v. *Seligman,* 3 Am. & Eng. Ry. Cas., 238; *Railway Co.* v. *Comstock,* 22 Atl. Rep., 511, s.c. 60 Conn., 200; *Jackson* v. *Railroad Co.,* 25 Vt., 159; *Railroad Co.* v. *Potter,* 42 *Ib.,* 274.

3. The first instruction granted to plaintiff is objectionable in that it fails to define what a necessary plantation road is, and leaves the construction of the statute to the jury. The second improperly defines the term "necessary plantation road," and makes the use to which the land is applied wholly immaterial. The third should have been refused, because the evidence showed that the "western crossing" was no crossing at all in contemplation of law, and the appellant had the right to take it up in the protection of its own interests and the safety of its trains and passengers.

4. The appellant's right of way antedated the statute, and its road was constructed long before such legislation was contemplated, and it would be unconstitutional to restrict its rights by such an additional burden. *Gulf, etc., R. R. Co.* v. *Rowland,* 35 Am. & Eng. Ry. Cases, 286; *Millman* v. *Railroad Co.,* 10 Barn., 87.

*Brame & Alexander,* for appellee,

Discussed the facts at length, and made, in connection therewith, the following points:

1. The constitutionality of § 3561, code 1892, has been already determined. *Railroad Co.* v. *Spencer,* 72 Miss., 491.

2. The act of 1884, in relation to railway crossings, being in force at the time of the organization of the appellant as a railway company, it acquired its charter and franchises in

view of that statute, and the same became, in effect, a part of its charter.

3. The facts show that the appellee had a right to the crossing by prescription, of which she cannot be deprived except upon due compensation. Thornton on Crossings, § 271; *Turner* v. *Railroad Co.*, 145 Mass., 433; *Bonelli* v. *Blakemore*, 66 Miss., 136.

4. The word "necessary," as used in the statute under consideration, does not mean indispensable or inevitable, but is equivalent to the words reasonably convenient. Thornton on Crossings, §§ 257, 268; *Jones* v. *Seligman*, 81 N. Y., 191; *Dubbs* v. *Railroad Co.*, 148 Pa., 69; *Hays* v. *Briggs*, 3 Pittsb., 504; Anderson's Law Dic., title Necessary; Abbott's Law Dic., 156.

5. The argument that the statute does not apply to roads on stock or dairy farms, requires no answer, as a part of the land is devoted to agriculture, and the road in question is used in hauling wood and gathering crops, as well as pasturing cattle, and is, therefore, a plantation road, according even to appellant's definition.

6. The necessity of the crossing is a matter of fact, and, as such, was properly left to the determination of the jury.

Argued orally by *W. L. Nugent*, for appellant, and by *C. H. Alexander*, for appellee.

WHITFIELD, J., delivered the opinion of the court.

The Alabama & Vicksburg Railroad Company became the purchasers of the property and franchises of the Vicksburg & Meridian Railroad Company, under foreclosure sale ordered by the federal court, in 1889, and reorganized under the provisions of the act of the legislature of this state, approved March 9, 1882 (Laws 1882, p. 47). The act of March 13, 1884, relative to farm crossings, was then in force, and was therefore integrated into its charter upon organization, and under said

laws as a part thereof, and appellant has, therefore, no stand-
ing to question the constitutionality of the legislative provisions
touching such crossings. The "crossings" referred to in
§ 3561 of annotated code of 1892, are to be "convenient and
suitable" for "necessary plantation roads." What does the
word "necessary" mean in this connection? How many cross-
ings must there be? In *Jones* v. *Seligman*, 81 N. Y., 195 (a
case cited by appellant's counsel), the prosecution already had
three crossings, and wanted a fourth, "of sufficient size to
allow cattle and horses to freely pass to and from a creek."
. . . "The solution of the question must depend, neces-
sarily, upon the facts and circumstances connected with the
location of the farm, the necessity of the crossings, and the
accommodation of the proprietor of the land, in the enjoyment
of the same, for ordinary farming purposes." . . . "It
is claimed that the three crossings, now in existence, were all
conveniently located, properly made, and sufficiently numerous,
and that the additional crossing, as well as the condition of
the other crossings, and their convenience, was a question of
fact for the decision of the judge upon the trial."

So, here it was a question of fact for the jury, and the ver-
dict must be accepted as a finding that the crossing here was
necessary, and was a crossing for a "necessary plantation
road." The word "necessary" means not "indispensable,"
but "reasonably convenient." This construction is approved
in Thornt. on Cross., § 268, and in *Chalcraft* v. *Railroad Co.*,
113 Ill., 86, and we think it as good a practical definition as
can be given.

The second instruction for plaintiff is a very clear and accu-
rate expression of the law upon this subject, and the appellant's
fourth instruction, in connection with it, certainly put the law
on this point to the jury as favorably to appellant as could
reasonably be asked. *Dubbs* v. *Philadelphia & Reading Rail-
road Co.*, 148 Pa. St., 66 (32 Atl., 883), is a case strikingly in
point, and in support of our view. There, as here, it was

urged that, by making a detour of half a mile, the crossing already established could be reached, and would thus be made to serve all necessary uses.    But the court said: "Thus, by making a detour of half a mile, he can reach the southern side of his farm.    If it were a detour of five miles, the principle would be the same.    The plain object of the act of 1849 was to compel railroad companies to give the owners of farms a convenient mode of access from one part to the other, when divided by a railroad.    While it may not be impossible for a farmer, in gathering his crops, to make a detour of half a mile in getting from one field to an adjoining field, it would manifestly be intolerably inconvenient."

The case at bar falls within the principle of these decisions, and the instructions of the court are in harmony with them. The word "plantation," too, should not be narrowed here to its mere etymological signification.    It should be understood in the sense which usage in the state in whose legislation it occurs has attached to it.    And the word, thus understood, would certainly cover a stock farm as well as a cotton farm. In this case, however, it is shown that the plantation is not only a stock farm, but is used also otherwise for agricultural purposes.    Other errors assigned are without merit.

*Affirmed.*