ALABAMA & V. RY. Co. *et al. v.* GRAHAM *et al.*

(Division A. Oct. 15, 1934.)

[157 So. 241. No. 31074.]

696

May, Sanders, McLaurin & Byrd, of Jackson, and Burch, Minor & McKay, of Memphis, Tennessee, for appellants.

Chalmers Potter, of Jackson, and **M. Ney Williams** and **H. B. Gillespie,** both of Raymond, for appellees.

Argued orally by **H. D. Minor**, for appellant, and by **Chalmers Potter**, for appellee.

**Cook, J.**, delivered the opinion of the court.

Appellees, the widow and sons of David Graham, deceased, instituted this suit against the Alabama & Vicksburg Railway Company and the Yazoo & Mississippi Valley Railroad Company, seeking to recover damages for the alleged wrongful death of the deceased. There was a verdict and judgment in favor of the appellees, from which this appeal was prosecuted.

The declaration alleged that on and prior to the 12th day of November, 1921, the appellant Alabama & Vicksburg Railway Company owned and operated a line of railroad which crossed a public highway leading from

Jackson to Clinton in Hinds county, Mississippi, at a point formerly called Four Mile Crossing; that on said date the board of supervisors of Hinds county, in which the Constitution of the state (Constitution 1890, section 170) then vested full and complete jurisdiction over roads, ferries, and bridges, by proper order entered on its minutes, determined that a bridge was necessary at this crossing for the public convenience and the safety of the property, lives, and limbs of the public, and ordered said railroad company to immediately "make easy and proper grades in said highway at the point where it crosses said railroad," and "to erect and maintain a bridge over its track at said point," and that there was no appeal from this order, which consequently became a final and conclusive order in a matter over which the board of supervisors had full and complete jurisdiction.

The declaration further alleged that it was the duty of the said Railway Company to construct this bridge and maintain the same; that after the erection of the bridge in question, the said Alabama & Vicksburg Railway Company leased its entire line of railroad to the Yazoo & Mississippi Valley Railroad Company; that thereafter the duty devolved upon the Yazoo & Mississippi Valley Railroad Company to maintain and keep in order the bridge and approaches thereto that had theretofore been erected over said railroad.

It was further charged that the said bridge was constructed and became a part of United States Highway No. 80; that a large number of motor vehicles, wagons, buggies, and pedestrians passed over it daily; that, by reason of the great amount of traffic over said bridge, it was the duty of the appellants to maintain in good order guard rails along each side of the bridge which would be reasonably strong so as to withstand and keep within the limits of the bridge, the ordinary stress, strain, weights, and forces to which it would be subjected, but that they wholly failed, neglected, and refused so to do.

and maintained the bridge with insufficient and flimsy guard rails which were incapable of withstanding the stress, weights, and forces to which it would reasonably be expected to be subjected.

The averments of the declaration in reference to the facts surrounding the injury and death of Mr. Graham will not be stated, as those facts will sufficiently appear in the following statement of the case as the same appears in the evidence.

On the afternoon of April 5, 1933, Mrs. Lillian Graham, one of the appellees, was driving a La Salle sedan from Clinton to Jackson, Mississippi, with her husband as a passenger. They were traversing the bridge which carried United States Highway No. 80 over the track of the appellants, and as she was driving down the eastern slope, or approach of the bridge, she came up behind a Chevrolet coupe proceeding in the same direction; she turned to the left for the purpose of passing this coupe, and, as she did so, she saw an automobile approaching from the east. She then attempted to cut back behind the coupe, and, as she did so, she struck the left side of the coupe, with the result that her sedan skidded or was thrown to the extreme left or north side of the bridge and was headed at an angle into the north wheel guard and guard rail. The sedan mounted the wheel guard and, after balancing for a perceptible time on the edge of the bridge, dropped to the ground below, about twenty-two feet. As a result of this fall, Mr. Graham was so severely injured that he died thirteen hours later.

The bridge in question consisted of a one hundred-foot span extending over the right of way of the appellants and long approaches on each side thereof. On each side of the bridge and approaches were wheel guards made of six by six timbers firmly bolted to the floor of the bridge. Above the wheel guards is what is called a rail guard, about three feet high, consisting of four by six uprights, placed six feet four inches apart. About half-

way to the top of these uprights there were attached two by six timbers, while at the top there was attached another two by six with a two by four timber immediately underneath the top timber or railing. There were no outside braces to this guard rail, and the width of the bridge between the wheel guards was eighteen feet.

The order of the board of supervisors directing the erection of this bridge reads, in part, as follows:

"Whereas, it is necessary to raise the highway at the point where said railroad crosses said highway first after leaving Jackson, so that said railroad will pass under said highway in and through a viaduct; and . . . Whereas, under section 4053 of the Annotated Code of 1906 (section 6677 of Hemingway's Annotated Code 1917) it is the duty of the Alabama & Vicksburg Railroad Company to make proper and easy grades in the highway so that the railroad (in this instance the Alabama & Vicksburg Railway Company) may conveniently cross and keep such crossing in good order; and Whereas, under said same section of law it is the duty of the Alabama & Vicksburg Railway Company to erect and keep in order all bridges on any highway at such points as bridges may be necessary to cross the railroad; and whereas, there is now on file in the office of the chancery clerk of Hinds county, in Jackson, Mississippi, plans, specifications and drawings for proper and easy grades in said highway at both points, and plans, specifications and drawings for the erection of the bridges at said points; and whereas, the law providing and the public convenience and safety, both as to property and life and limb, demanding,

"Be it further hereby ordered and adjudged by the board of supervisors of Hinds county, Mississippi, that the Alabama & Vicksburg Railway Company be and is directed and commanded to forthwith and immediately do and perform as the law requires and as the public con-

venience and the safety of property, limb and life demands, the following things, to-wit,

"(1) The Alabama & Vicksburg Railway Company shall make proper and easy grades in said highway at said points where said highway and said railroad cross so that the railroad may be conveniently crossed, and to hereafter keep said two crossings in good order.

"(2) The Alabama & Vicksburg Railway Company shall erect and keep in order said bridge on the highway over the railroad track at said first railroad and highway crossing on said railroad after it leaves Jackson, and to erect and keep in order all necessary bridges for the highway where it is to cross under the railroad track at said second railroad crossing, which said two bridges are necessary to cross said railroad at said first and second intersection of the highway and railroad.

"All of said grades, bridges, crossings and approaches to be strictly in accordance with plans, specifications and drawings of said approaches, grades, crossings and bridges now on file with the chancery clerk of Hinds county, in Jackson, Mississippi, reference to which is hereby made as a part of this order."

The testimony is to the effect, further, that the railroad company objected to the order requiring the erection of this bridge and also to the plans therefor, but that, after negotiations extending over several months, it was finally agreed that the county should have the bridge erected according to plans agreed upon, and that the railroad company would pay approximately one-half of the cost thereof. Thereafter, the county advertised for bids and let the contract for the construction of the bridge, and the same was constructed under the supervision of engineers of the state highway department. After the bridge was completed, it was accepted by both the state and federal highway officials.

M. H. Keele, a civil and construction engineer, presented a drawing of the bridge at the point of the ac-

cident, and in connection with this drawing gave a detailed description of the bridge. He testified that the guard rails afford little protection to the traveling public other than the visual effect of seeing the limits of travel; that it was the wheel guard that afforded the real protection; and that, in his opinion, a wheel guard constructed of six by six beams was insufficient for the purpose, for the reason that the wheels of automobiles will mount such a guard when they strike it. He further testified that this bridge was located on a transcontinental highway near the city of Jackson, in Hinds county, Mississippi, in a thickly populated community, and that the traffic over it is very heavy.

Clarence Simmons, who had been bridge engineer for the state highway department since 1920, testified that he prepared the plans for this bridge, and that it was constructed according to these plans, which were prepared in accordance with the standards adopted and required by the state highway department in 1921. He further testified that since 1921 the standards and requirements for wheel guards and guard rails have been materially raised by the state highway department, and that since 1931, this standard requires a wheel guard constructed of timbers six by eight running the entire length of the bridge, resting on blocks four by six by twelve inches placed on the floor of the bridge at three and one-half foot intervals, with another six by six timber on top of the six by eight, all securely bolted through the stringers of the bridge, making a wheel guard, after dressing, of fifteen inches instead of six inches as originally required, and that, in his opinion, the 1921 standard did not afford sufficient protection to the traveling public.

As to the speed of Mrs. Graham's car at the time she struck the coupe in front of it, and the force of the blow, the testimony is conflicting. Mrs. Graham testified that she was driving at about ten miles per hour, while other witnesses estimated her speed to be from twenty to twen-

ty-five miles per hour. The evidence further shows that the accident occurred on the eastern approach of the bridge, at a point two hundred seventy-five feet east of the east right of way line of the railroad.

To the declaration, the appellants interposed several special pleas, to all of which demurrers were sustained. The first and second special pleas were to the effect that the bridge, as originally built, was in accordance with plans and specifications provided by the state highway department and approved by the board of supervisors of Hinds county, and that since the Act of 1926, chapter 218, the entire control and management of the bridge and its maintenance have been exercised by the state highway department; that neither the bridge nor the approaches thereto were constructed by the appellants or either of them; and that the appellants had not been required or permitted to take any part in the construction or the maintenance of the bridge or its approaches.

By special plea No. 3, the appellants averred that the order directing this bridge to be built was void, because the bridge was unnecessary. By special plea No. 4, the appellants alleged that while the bridge proper was built over their right of way, the approaches thereto did not cover any part of the right of way of the appellants, and that the accident occurred on the approaches at a point far east of the eastern right of way line of the appellants. By special plea No. 5, the railroad company asserted there was no liability against it for the reason that the bridge was built by Hinds county in accordance with plans and specifications approved and adopted by the county, and that, since that time, the state highway department has maintained the bridge, and that neither of the appellants has had any part in the maintenance thereof.

After demurrers to these special pleas were sustained, the appellants gave notice under the general issue setting

up substantially the same matter as was contained in the special pleas.

The court submitted the cause to the jury upon the theory that section 4053, Code 1906, which was in force at the time the bridge was constructed, was controlling, and that, under that section, it was the duty of the appellants to construct and maintain the entire structure. Objections were sustained to the evidence offered in support of the defensive matter set up in the notice under the plea of the general issue, and the court instructed the jury that the appellants were "under the law responsible for the erection and maintenance of the bridge in question;" that it was the duty of appellants to exercise reasonable and ordinary care in the construction and maintenance of this bridge with respect to guard rails and wheel guards; that in considering whether the appellants were negligent in not providing sufficient guard rails and wheel guards, although the jury would not be bound thereby, they might take into consideration the standard guard rails and standard wheel guards approved by engineers of ability and standing, and which had existed for a sufficient length of time for appellants to have been aware of their existence; that even if the wheel guard and guard rails were up to the standard at the time the bridge was constructed, the appellants might be liable if they had failed to keep step with advanced standards with respect to guard rails and wheel guards; that the appellants were charged with knowledge that in the ordinary use of the bridge persons operating automobiles would be likely to drive against the wheel guard and guard rails, and that the appellants should have provided sufficient guards to prevent accident in such cases; that even though Mrs. Graham was negligent in striking the automobile in front of her, this would not prevent a recovery if the wheel guards on the bridge were negligently constructed or maintained.

For the appellants, the court instructed the jury that

it was the duty of Mrs. Graham on approaching the bridge and traversing it to proceed at a speed which was reasonable and proper, having due regard to the traffic then on the bridge and the safety of the public, and having due regard to the then wet condition of the bridge; that it was the duty of Mrs. Graham to have such control over her car as not to strike an automobile preceding her on the bridge; that she was guilty of negligence in striking the car preceding her; and that there could be no recovery for injuries resulting solely from her negligence.

In passing upon the points raised by the appellants, we will first consider the effect of the adjudication of the board of supervisors that the construction of the bridge in question was necessary for the public convenience and the safety of the lives, limbs, and property of the public. Section 4053, Code 1906, provides that: "Where a railroad is constructed so as to cross a highway, and it be necessary to raise or lower the highway, it shall be the duty of the railroad company to make proper and easy grades in the highway, so that the railroad may be conveniently crossed, and to keep such crossings in good order; and it shall be the duty of the company to erect and keep in order all bridges on any highway, at such points as bridges may be necessary to cross the railroad; and any company which shall fail to comply with these provisions shall forfeit the sum of one hundred dollars, to be recovered by action in the name of the county in which the crossing or bridge is situated."

The argument of counsel seems to be that under this statute there was no duty on the railroad company to erect and keep in order a bridge on any highway where there was already an existing crossing over which the "traveling public could and did cross said tracks safely at grade," and, since there was already a grade crossing at the point where the bridge in question was ordered

to be built, the board of supervisors was without authority to adjudicate that the bridge was necessary, and without authority to require the railroad company to construct such a bridge. We do not think the requirement of this statute that a railroad company shall "erect and keep in order all bridges on any highway, at such points as bridges may be necessary to cross the railroad," can be so limited as to apply only to points where convenient grade crossings cannot be constructed or utilized. In the construction of grade crossings or bridges over railroad tracks, not only the convenience, but the safety of the lives, limbs, and property of the traveling public, must be considered, and in enacting this statute it could not have been the purpose of the Legislature to make it the duty of railroad companies to erect and maintain bridges only at points where it was impossible to otherwise get across the railroad tracks. Under some conditions a grade crossing might be entirely sufficient, while under others it might be exceedingly dangerous to the life and property of the traveling public. Traffic conditions are the controlling factors in determining the necessity of a bridge over railroad tracks, and not the ability to get across such tracks at grade.

The meaning of the word "necessary," as used in a similar statute requiring railroad companies to make and maintain convenient and suitable crossings over their tracks for necessary plantation roads, was considered in the case of Alabama & V. Ry. Co. v. Odeneal, 73 Miss. 34, 19 So. 202, and it was there held that the solution of the question must depend, necessarily, upon the facts and circumstances connected with the location of the farm, the necessity of the crossings, and the accommodation of the proprietor of the land, in the enjoyment of the same for ordinary farming purposes, and that, "The word 'necessary,' as used in the statute requiring railroad companies to make and maintain convenient

and suitable crossings over their tracks for necessary plantation roads, does not mean only such roads as are indispensable, but also such as are reasonably convenient."

At the time this bridge was ordered to be constructed, the state Constitution vested in the boards of supervisors full and complete jurisdiction over roads, ferries, and bridges, and in the exercise of this jurisdiction the board had the power to determine the character of crossings that should be constructed at all points where railroad tracks crossed the public highways of the state. In the exercise of this jurisdiction and in the discharge of its duty to the public, the board of supervisors of Hinds county adjudicated that the bridge here in question was necessary, not only for the convenience of the traveling public, but for the safety of their lives and property, and this adjudication, including its order to the railroad company to immediately erect the bridge in question, unappealed from, became and was final, conclusive, and binding upon the appellant company. Both at common law and by the statute above considered, the duty rested on the appellant company to construct such a bridge as might be necessary for the convenience and safety of the public, and both at common law and by statute, it was its continuing duty to maintain this bridge and its approaches in good order and in a condition reasonably safe for the ordinary uses of the public. Illinois C. R. Co. v. Copiah County, 81 Miss. 685, 33 So. 502; 51 C. J. 660; 22 R. C. L. 889-891 and 906; State v. Minnesota Transfer Co., 80 Minn. 108, 83 N. W. 32, 50 L. R. A. 656; State ex rel. v. St. Paul, etc., R. Co., 38 Minn. 246, 36 N. W. 870.

Since this duty rested upon the appellant company, and it had been finally determined by the board of supervisors that a bridge at the point in question was necessary, and a final order had been made requiring the company to immediately erect the bridge, the question then arises as to whether or not the railroad company was

relieved of this duty, and relieved of subsequent liability for defective construction and maintenance of the bridge, by reason of the fact that, as a result of subsequent negotiations, it was agreed that the county should erect the bridge and share in the expense thereof.

The fact that the public officials assumed a part of the financial burden imposed by law upon the appellant company, and also assumed the burden of erecting and maintaining the bridge and approaches, did not relieve the appellants of their legal liability for a defective or insufficient performance of the duty to erect and maintain the bridge. As said in Crist v. Minneapolis, etc., R. Co., 162 Minn. 1, 202 N. W. 57, 59: "The highway officials, whether town or state, did not have the power by contract or otherwise to make the defendant immune from claims for damages resulting to claimants from a negligent failure to do that which the law commanded. From the liability resulting from a nonperformance of this uncompensated duty there is no escape."

It is contended, however, that if it should be held that the duty originally rested on the appellants to erect and maintain this bridge, they were relieved of that duty by the enactment of chapter 278, Laws 1924, as amended by chapter 218, Laws 1926, and further amended and brought forward in chapter 122, Code 1930 (section 4989 et seq.), whereby the state highway commission was vested with full authority and jurisdiction over certain designated highways, including United States Highway No. 80, and was charged with the duty of maintaining these highways.

Prior to 1924, section 170 of the state Constitution vested in the board of supervisors full and exclusive jurisdiction over roads and bridges, but in 1924, this section was amended by adding the provision that "the Legislature may have the power to designate certain highways as 'state highways,' and place such highways under the control and supervision of the state highway

commission, for construction and maintenance.'' Pursuant to this amendment, the Legislature designated certain highways as ''state highways,'' and by section 4999, Code 1930, made it the duty of the state highway commission to ''construct, reconstruct, and maintain, at the cost and expense of the state, all primary highways as herein defined, up to such standard and specifications, and with such surfacing material as the state highway commission may determine.'' By section 5006, the state highway commission was given the power to have and exercise, (1) ''full and general supervision over all matters relating to the construction or maintenance of the state highways,'' and (2) ''to receive and assume exclusive control for the benefit of the state, of any and all highways herein or hereafter fixed as roads constituting a part of the state highway system;'' while by section 5007, the highway commission was granted the power to require the elimination of grade crossings which it regarded as dangerous to the public safety. In the same Code (section 6127), section 4053, Code 1906, was brought forward and reenacted without change, except as to the penalty provided for failure to comply with its provisions.

The amendment of section 170 of the Constitution of 1890 did not itself remove or in any manner affect the jurisdiction over roads, ferries, and bridges theretofore vested solely in the boards of supervisors, but it authorized the Legislature to take from such boards their exclusive jurisdiction over certain highways, and to confer on the state highway commission control and supervision of such highways, for the purpose of construction and maintenance. In exercising this power granted by the amendment of section 170 of the Constitution, it appears manifest to us that the Legislature did not intend to relieve the railroad companies of the duty that had theretofore been imposed upon them to erect and maintain crossings and bridges over their tracks. The only

purpose of the act vesting this jurisdiction in the highway commission was to transfer the jurisdiction which had previously rested solely upon the boards of supervisors to the highway commission, and by so doing, the duty of the railroad companies in reference to the erection and maintenance of bridges was in no way affected. The statute imposing the duty upon railroad companies to erect and maintain crossings and bridges over their tracks was brought forward and re-enacted in the Code of 1930, along with the act conferring jurisdiction on the highway commission over certain roads. They are not necessarily in conflict, and when construed together, we can find in these statutes no purpose on the part of the Legislature to relieve the railroad companies of the duties previously imposed upon them in reference to the maintenance of bridges on any of the highways of the state.

The evidence supports the view that the appellee Mrs. Lillian Graham was guilty of negligence in striking the car immediately preceding her, and the trial court instructed the jury that she was guilty of negligence in so doing, and the appellants contend that, consequently, there was no breach of duty on their part, since the measure of their duty in maintaining the bridge was to use ordinary care to keep it in a reasonably safe condition for persons exercising reasonable care in the use thereof. That the measure of a railroad company's duty in the maintenance of its crossings and bridges, and of a municipality's duty in maintaining its streets, is to use ordinary care to keep them in a reasonably safe condition for persons exercising ordinary care and prudence, was held in the cases of Gulf, etc., R. Co. v. Simmons, 150 Miss. 506, 117 So. 345 and McComb v. Hayman, 124 Miss. 525, 87 So. 11, and numerous other cases in this and other jurisdictions; but it does not necessarily follow that there can be no liability to a person who was not exercising care. It is true that if the appellant com-

panies have discharged their duty to keep the bridge in such condition as to render it reasonably safe for persons using ordinary care, there can be no legal liability to any one, but if they negligently failed to discharge their duty in this regard, and their failure so to do contributed to the injury and death of the deceased, a recovery is not barred by reason of the negligence of the driver of the car. Such negligence would only operate to diminish the damages recoverable.

The instructions granted to the appellees stated the measure of the appellants' duty in reference to the maintenance of the bridge and its approaches in substantial compliance with the rule in reference thereto above announced. There was evidence which supported the finding by the jury that the appellants failed to use reasonable care to maintain the bridge in condition to be reasonably safe for persons using ordinary care and prudence, and we find no reversible error in this record. The judgment of the court below will therefore be affirmed.

Affirmed.