HOLMES *v.* T. M. STRIDER & Co. *et al.*

(Division B.  June 5, 1939.)

[189 So. 518.  No. 33736.]

J. D. Thames and Vollor & Teller, all of Vicksburg, for
appellant.

**Chaney & Culkin**, of Vicksburg, for appellee, T. M. Strider & Company.

**Brunini, Wright & Brunini,** of Vicksburg, for appellee, Vincennes Steel Corporation.

Argued orally by **Landman Teller** and **J. D. Thames, Jr.**, for appellant, and by **John Brunini** and **A. A. Chaney**, for appellee.

**McGehee, J.**, delivered the opinion of the court.

The question presented for decision on this appeal is whether the court below was in error in granting a peremptory instruction in favor of the appellees. It is necessary to such decision, that we consider everything to have been proven which the evidence establishes, directly or by reasonable inference, against the parties in whose favor the instruction was granted. New Orleans & N. E. R. Co. v. Jackson, 140 Miss. 375, 105 So. 770; New Orleans & N. E. R. Co. v. Martin, 140 Miss. 410, 105 So. 864; Yates v. Houston & Murray, 141 Miss. 881, 106 So. 110; Lowe v. Mobile & O. R. Co., 149 Miss. 889, 116 So. 601; Lee County Gin Co. v. Middlebrooks, 161 Miss. 422, 137 So. 108; Keith v. Yazoo & M. V. R. Co., 168 Miss. 519, 151 So. 916; Gravette v. Golden Saw Mill Trust, 170 Miss. 15, 154 So. 274; Masonite Corporation v. Dennis, 175 Miss. 855, 168 So. 613; and the case of Stricklin v. Harvey, 181 Miss. 606, 179 So. 345.

The appellee, T. M. Strider & Company, are road contractors. They contracted with the Highway Commission to do certain work on U. S. Highway 61, in Claiborne County, north of Port Gibson. The contract contemplated, among other things, the placing of an extra steel span 100 feet in length in a bridge across Little Bayou Pierre, immediately north of the corporate limits of Port Gibson. The appellee, in pursuance of the contract, closed the highway across the bridge and did some preliminary work on the bridge, preparatory to placing the span, when they were notified by the Highway Department to stop work on the bridge. The notice given by the Highway Department was a letter, which is here copied:

"Port Gibson, Miss.
"April 17, 1937.
"Miss. PWS Docked 1043-R
"P. W. S. 176 B
"Claiborne County.
"T. M. Strider & Co.
"Port Gibson, Miss.
"Gentlemen:
"This is your authority to stop work on the bridge on the above numbered project. You are to replace hand rail, wheel guard, and posts and open bridge to traffic until notified to resume work.

"It is understood that the cost of replacing the above items will be paid by the State Highway Dept.,

"Very truly yours,
"F. B. Davison,
"Project Engineer".

It was shown that the contract of the appellee, T. M. Strider & Company, was for the construction of Mississippi P. W. S. Projects 168-A, 168-B and 176-B, Docket 1043-R; and that Project 176-B was for rebuilding and putting the extra steel span aforesaid in this bridge across Little Bayou Pierre, located about two blocks north of where the plaintiff and others got into the automobile, in which she was a guest, and which automobile plunged from the bridge upon striking the hand or guardrail, to a depth of about thirty feet, causing her to sustain the permanent injuries complained of and to become crippled for life, as well as causing the death of some of the other occupants of the car and severe injuries to some.

The appellant introduced as a witness, A. E. Alford, a patrolman of the State Highway Department, who testified that he and two other employees of the Department assisted a crew of men who were working for appellee, T. M. Strider & Company, to replace the hand or guardrail, wheel guard, posts, etc., and to reopen the bridge for public travel on the said 17th day of April, 1937, the date on which the notice to such contractor was received from the project engineer of the Department in

that behalf, as contained in the letter hereinbefore quoted. This witness further testified that when the appellee contractor started to work on this bridge, prior to the notice given by the Highway Department aforesaid, the wheel guards on the bridge were bolted down and the posts were bolted to the caps and stringers, and that they were secure; that the hand or guardrails were 2x8 inches in dimension, and that the posts on which they were fastened were stationed seven or eight feet apart; that the contractor on beginning the work took down the wheel guards, hand or guardrails, and also removed 100 feet of the flooring; and that upon receipt by the contractor of the notice to stop work as aforesaid, the posts were put back, as many of them with bolts as would catch to the old sills; and the others were nailed; that these posts for the hand or guardrails were placed 19½ feet apart; and to which posts the hand or guardrails were again fastened. Of course, the flooring was also replaced on that day before the bridge was reopened for public travel. He also testified that the bridge remained in that condition until the next work was done thereon, about the 25th and 26th days of May, by the contractor on a force account (that is to say, at the cost of labor and materials, plus 10%, as this Project 176-B had in the meantime been eliminated from the original contract). No change was made, however, in the hand or guardrail after it was replaced by the contractor until after the accident complained of occurred on December 13, 1937.

In August, 1937, a maintenance crew of the Highway Department again changed the flooring, took up the wheel guards and replaced them, covered the floor with three or four inches of gravel, so that it extended to within about two inches of the top of the wheel guard, but did not then alter the condition of the hand or guardrail except possibly to strengthen it to some extent. This witness had occasion to go down and see the bridge after the accident occurred, and found one of the posts and two hand or guardrails torn off, and saw that there had been no change in the condition of the hand or guardrail at all

from the time that they were replaced by the contractor, with his assistance, and the time of the accident, as heretofore stated.

Although this witness testified that in replacing the hand or guardrails, wheel guards, etc., he was working under a Mr. Stogdell, and understood that he was then working for the appellee, Vincennes Steel Corporation, it was shown by the evidence as a whole that he was then a servant of the appellee, T. M. Strider & Company. He further said that the work was being done under the supervision of the project engineer, F. B. Davidson, of the State Highway Department. But, be that as it may, neither an engineer, the Highway Department nor the contractor, T. M. Strider & Company, had the right to authorize the replacing of this hand or guardrail in a negligent manner so as to impair the safety and lives of the traveling public having occasion to use the bridge when it was reopened for public travel. Moreover, it does not appear that either the Highway Department or the project engineer instructed that the hand or guardrail be replaced in the manner testified to. The letter of April 17, 1937, addressed by the project engineer to the contractor, T. M. Strider & Company, directed that the handrail, wheel guard and posts be replaced, and that the bridge be opened to traffic. In the absence of proof of any instruction given to the contrary, it should be presumed that they were to be replaced in the condition in which the contractor had originally found them, or at least in a manner to insure a reasonably safe use of the bridge by the traveling public. It was not seriously contended that the hand or guardrail was replaced in a substantial and safe manner, but the appellee contractor relied upon a supplemental agreement with the Highway Department, bearing date of June 18, 1937, and pleads an alleged release from the Highway Department from all further liability under the contract. However, the Highway Department was without authority to release the contractor from liability to the general public that may have been occasioned by the alleged negligent manner

in which these hand or guardrails were replaced. Neither did it undertake to do so in the supplemental agreement or final release introduced in evidence.

Assuming that there was no duty on the part of the contractor to maintain the work which it had performed, and that it could be released by the Highway Department from such an obligation if it existed, these facts would not relieve the contractor of liability for negligence, which may have been still in progress and not have lost its identity and continuity when the injury occurred. Public Service Corporation et al. v. Watts, 168 Miss. 235, 150 So. 192.

In the case of Alabama & V. R. Co. et al. v. Graham et al., 171 Miss. 695, 157 So. 241, 245, although unlike the case at bar in some respects, there was a continuing duty on the part of the railroad company to maintain the safety of the hand or guardrails on the overhead bridge against which Mrs. Graham negligently ran her car, and the Court held that the evidence supported the finding of the jury that the railroad company failed to use reasonable care to maintain the hand or guardrail in a condition to be reasonably safe for persons using ordinary care and prudence; and in that case the hand or guardrail was shown to be much more substantial than the one in the case at bar. And, the Court quoted with approval from the case of Crist v. Minnesota, etc. R. Co., 162 Minn. 1, 202 N. W. 57, 59, the following: ''The highway officials, whether town or state, did not have the power by contract or otherwise to make the defendant immune from claims for damages resulting to claimants from a negligent failure to do that which the law commanded.'' Whether the work was performed under the original contract in the case at bar or was done under a force account as testified to, the appellee contractor undertook the duty of replacing the hand or guardrail, and in so doing, the law would require that the standards of safety and good workmanship should be complied with when known to be essential to the safety of the traveling public. Moreover, the fact that the Project Engineer of the Highway Department, super-

vising the work, may have also been negligent in not requiring the contractor to replace the hand or guardrail in a safe condition would not relieve the contractor of its own negligence in that behalf. It was held in Morgan-Hill Paving Company v. Fonville, 224 Ala. 383, 140 So. 575, 578, that: "If defendant was guilty of negligence which proximately caused plaintiff's hurt, as alleged in count 4 of the complaint, it cannot shield itself from liability by instructions from the state highway department. The law imposed on defendant the duty of exercising reasonable care, and will hold it liable for its failure to do so, regardless of such instructions."

It would not be necessary to the establishment of liability in this case that the provision of the contract contained in the printed specifications be given application to the effect that: "The Director reserves the right to open or close any section of the project to public travel at any time; this shall not be construed as acceptance by the Director of such sections. The Contractor shall take such steps as are necessary to safeguard his work and operations, and the public," for the reason that the alleged cause of action sued on does not necessarily grow out of a breach of any contract. It is one for damages growing out of the contractor's alleged tort in rendering the highway dangerous through negligence. It arises out of a legal duty devolved upon the contractor not to obstruct or make the highway dangerous for travel and leave it in that condition when the highway is being opened for public use. This duty being one to the public generally, it may be enforced by anyone if damages occur on account of a failure to perform that duty. The liability here, if established, does not depend upon the contract in question, but upon the broader principle of the duty imposed upon the contractor by general law. Wade v. Gray, 104 Miss. 151, 61 So. 168, 43 L. R. A. (N. S.) 1046.

It is next insisted that in view of the fact that the Maintenance Department of the Highway Commission made certain changes in the bridge in August, 1937, prior to the accident, in placing gravel between the wheel guards

and making it easier for an automobile to pass over the wheel guard and against the hand or guardrail that this would serve as an efficient intervening cause so as to relieve the contractor of liability for the manner in which the hand or guardrail had been replaced. Responding to this contention, we refer to the case of Solomon et al. v. Continental Baking Company, 172 Miss. 388, 160 So. 732, 733, where the rule is stated that: "where an act of negligence is a substantial factor in bringing about an injury, it does not cease to be a legal and proximate cause thereof because of the intervention of a subsequent act of negligence of another which contributed to the injury, if the prior act of negligence is still operating, and the injury inflicted is not different in kind from that which would have resulted from the prior act." It was also said in the case of Superior Oil Company et al. v. Richmond et al., 172 Miss. 407, 159 So. 850, 852, that: "An intervening force which combines with the negligence of another in producing injury to a third person does not necessarily supersede the original act of negligence and become the sole proximate cause of harm produced thereby. Op. cit., 2 Restatement, Torts, sec. 441; Cumberland Tel. Co. v. Woodham, 99 Miss. 318, 54 So. 890." Without the original act complained of and alleged negligent manner in which the hand or guardrail was replaced on April 17, 1937, what was done by the maintenance crew in August of said year would not have been sufficient, under the proof now disclosed by this record, to have caused the automobile to have plunged off of the bridge in question. Conner v. State, 179 Miss. 795, 177 So. 46.

It was held in the case of Kane v. Indianapolis et al., C.C., 82 F. 770, 773, where Clark, a contractor, was declared liable along with the municipality, that while the responsibility of the city to protect third parties from injuries on account of the dangerous and defective condition of its streets and sidewalks was primary, that the complaint showed that the responsibility of the defendant Clark was also primary, "because he constructed the defective and dangerous step which caused the injury."

Many cases are cited by the appellee in support of the rule, which is in accord with practically all of the authorities, to the effect that, after the contractor has turned the work over and it has been accepted by a public board or commission as satisfactory, the contractor incurs no further liability to third parties, by reason of the condition of the work, and that the responsibility, if any, for maintaining or using it in its defective condition, is shifted to the public board or commission. This rule, however, is subject to some qualifications, among them the cases where the work is a nuisance per se, or *where it is turned over by the contractor in a manner so negligently defective as to be imminently dangerous to third persons.* The rule thus contended for by the appellee was approved and applied by this Court in the cases of Herring v. Planters' Lumber Co., 169 Miss. 327, 153 So. 164; and Vicksburg v. Holmes, 106 Miss. 234, 63 So. 454, 51 L. R. A. (N. S.) 469. We are of the opinion that it was a question for the jury as to whether the facts in the record now before us were such as to bring the case within the exception above mentioned and emphasized. While the case of Alabama & V. R. Co. v. Graham et al., supra, involved a different situation, as to the extent and nature of the duty and obligation of the railroad company, than the status occupied by the contractor in the present suit, we are of the opinion that the principles of law therein announced are applicable on the question of whether the contractor was negligent in failing to discharge the duty which it owed to the appellant and the public generally.

It follows that the cause must be reversed and remanded for a new trial as to the appellee, T. M. Strider & Company. But, in so far as the other appellee, Vincennes Steel Corporation, is concerned, we do not think that the evidence as a whole, when fully understood, is sufficient to establish any responsibility for the negligence complained of, and the peremptory instruction in its favor was proper.

Reversed in part, affirmed in part, and remanded.