571 So.2d 916 (1990)
Timothy A. McKAY, By and Through His Guardian and Next Friend, Thomas G. McKay
v.
BOYD CONSTRUCTION COMPANY, INC., and Mississippi State Highway Commission.
No. 07-CA-58938.
Supreme Court of Mississippi.
November 28, 1990.
Charles P. Reiter, Milwaukee, Wis., Paul Snow, Paul Snow & Associates, Jackson, and David J. Slaughter, Madison, for appellant.
Leland S. Smith, III, McCoy Wilkins Noblin & Stephens, Jackson, and Walter E. Wood, Pickett Wood & Valentine, Ridgeland, for appellees.
Before ROY NOBLE LEE, C.J., and ROBERTSON and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
Timothy McKay, by and through his guardian and next friend, Thomas G. McKay (collectively McKay) appeals from summary judgments rendered by the Circuit Court of Hinds County. The lower court held that McKay was barred from bringing an action in tort for money damages against the Mississippi Highway Commission and Boyd Construction Company for injuries he suffered while traveling on U.S. Highway 49 in Simpson County.

Course of Proceedings
On December 2, 1983, McKay filed a complaint in Simpson County Circuit Court naming as defendants Boyd Construction Co., Inc. (hereinafter Boyd); Hyde Construction Co.; Cook Construction; and Mississippi State Highway Department.
Subsequent to this filing, the Highway Department filed its Motion To Dismiss Or In The Alternative Motion For Summary Judgment Pursuant To Mississippi Rules of Civil Procedure 12 And 56. It also filed its defenses and separate answers to McKay's complaint.
*917 Boyd, on January 10, 1984, likewise, filed its Answers and four defenses to McKay's complaint. On the same day, Boyd also filed his Petition for Removal from Simpson County Circuit Court to United States District Court for the Southern District of Mississippi, Jackson Division.
On October 17, 1984, McKay took a voluntary nonsuit as to Hyde and Cook. On November 21, 1984, Judge Tom S. Lee entered his memorandum opinion finding that the Highway Department is not an entity capable of being sued. The District Court also asserted that if McKay's complaint were amended it would still fail because the Highway Commission[1] also is protected by the doctrine of sovereign immunity. The district court also found that Boyd had received a full and final release from the Highway Commission, thereby releasing it from all liability.
The district court, on December 7, 1984, entered its order granting summary judgment to Boyd and an involuntary dismissal to the Highway Commission. The court "dismissed" the action as to Boyd based on an affidavit from the President of Boyd. This affidavit stated that Boyd had gotten a full and final release from the Highway Commission and that there were no genuine issues of material fact in McKay's claim against Boyd.
On December 17, 1984, McKay appealed the district court's order to the Fifth Circuit Court of Appeals. After the filing of briefs and oral argument, on August 30, 1985, the Court of Appeals reversed the district court and held that the 11th Amendment to the Constitution of the United States prevented a Federal District Court from exercising removal jurisdiction in a case in which a state agency was a party defendant. McKay v. Boyd Construction, Co., Inc., 769 F.2d 1084, 1087 (5th Cir.1985). The court concluded that it was necessary to remand the claims for both the Highway Commission and Boyd because joint liability had been alleged. In the end, the court remanded the case to the district court with directions to remand it to the state court. Id. at 1088.
In accordance with this order, on September 6, 1985, the district court remanded the case to the Simpson County Circuit Court. On October 30, 1985, Boyd filed a Motion for Summary Judgment with an affidavit and a supporting brief in Simpson County Circuit Court. Subsequently, this case was transferred to the Hinds County Circuit Court, First Judicial District based on jurisdictional venue requirements of Miss. Code Ann. § 11-45-1 (1972), which requires that suits against the state be brought in the court which holds its sessions at the seat of government.
On February 27, 1987, the Circuit Court of Hinds County, the Hon. Charles Barber presiding, granted summary judgment in favor of Boyd. In its order, the court concluded that Boyd had received a full final and complete release and no genuine issue of material fact existed. He also found that there were no genuine issues of material fact.
On November 3, 1987, the Hinds County Circuit Court, the Hon. James Bell presiding, entered an order allowing McKay to file an amended complaint. McKay filed this amended complaint on November 17, 1987. This amended complaint incorporated the public nuisance concept along with the earlier averments.
On November 25, 1987, Judge Bell, by special appointment, granted summary judgment in favor of the Highway Department. The trial court granted this motion because the governmental entity was protected by the doctrine of sovereign immunity and thus was incapable of being sued.
McKay filed his notice of appeal to this Court from that order on November 30, 1987.

Why was McKay in the Court in the first place?

The Facts
On June 15, 1967, two-year-old Timothy McKay was a passenger in an automobile *918 driven by his mother, Elizabeth McKay. They were traveling from Wisconsin to visit Elizabeth's sister in New Orleans. Also on this trip were McKay's grandmother, an older brother and an older sister.
During the noon hour their vehicle strayed slightly to the left of the four-lane divided highway and made contact with the blunt edge of the concrete abutment for the Strong River Crossing in Simpson County. This abutment was located approximately 23 inches from the traversed portion of the access road which at that time had posted speed limits of 65 mph. In this tragic crash, everyone except McKay was killed instantly. McKay, however, suffered severe brain stem injuries. The injury rendered him blind, mentally incompetent, incapable of communicative speech, no motor abilities, and incapable of caring for his day-to-day needs. He is totally dependent upon others for his care. Presently, McKay is an orphan because his father died in 1965.[2]
On December 2, 1983, McKay filed suit in Simpson County Circuit Court alleging that the "paved portion of the South bound lanes of U.S. Highway 49 approaching the Strong River Bridge in Simpson County was negligently constructed [because] it was unduly pitched to the left tending to cause vehicles using the area to drift leftward toward the bridge abutment."
McKay also asserted that the defendants, in constructing this highway violated rules and regulations pertaining to safety standards set forth by the federal government. The defendants, according to McKay, failed to provide guardrails to prevent head-on contact with abutments in the right of way; therefore, he was denied the "usual right to travel in safety which was among the usual rights afforded to citizens using the network of U.S. Highway[s]." McKay further alleged that the defendant's conduct was the proximate cause of the injuries he sustained. And, for his injuries, McKay demanded judgment in the amount of $10 million for compensatory damages and $30 million for punitive damages along with attorneys fees, costs and other relief.
Boyd filed its answers and defenses and provided an affidavit of its president. In this affidavit, the president stated that Boyd entered into a contract with the Highway Commission on March 14, 1962. According to the contract, Boyd was responsible for "clearing and grubbing, common excavation of the roadway, construction of the Strong River bridges, and construction of the overpasses on approximately eleven (11) miles of [Highway 49] in Simpson County."
Prior to the letting of the contracts, all surveys, plans and specifications were prepared by the Highway Commission and submitted to the Federal Bureau of Public Roads (hereinafter Bureau) for its approval. But for the special provisions of the contracts which were let, all specifications came from the Red Books published by the American Association of State Highway Officials (hereinafter AASHO). Moreover, Boyd had no part in the design and specification stage of the planning; therefore, it had no control over the design and location of bridge including abutments, but its role was limited to bidding on the project as designed and approved by the Highway Commission and the Bureau.
Boyd was not paid for its work until inspections by the Highway Commission and the Bureau were conducted and written approval was given. No deviation from plans was allowed. The Bridge construction and excavation work done at the Strong River Bridge was done in this manner, and the excavation work did not have any effect in the manner in which the roadway was pitched. A second contractor did the paving, which was not completed and made ready for traffic until two years later. Boyd was not contracted to construct any guardrails. When Boyd completed its work under its contract, the Highway Commission and the Bureau inspected all of its work and the materials used. Only after these inspections did Boyd receive a full, final release from all liability under the contracts as well as from all public liability in 1963.
*919 In response to Boyd's affidavit, McKay provided two affidavits. The affidavits provided by Henry L. Munch, President of a construction company, and Kenneth T. Kloiber, an engineer, give little information. They only assert that they read the affidavit of the president of Boyd and reviewed AASHO's guidelines for the period of time in question. Based on these readings, they refuted the president's contention that it was appropriate for Strong River Bridge to have only a 23 inch clearance. They also asserted that the bridge was not built within the AASHO Guidelines.
After hearing this evidence, the trial court granted Boyd's and the Highway Commission's motions for summary judgment. McKay now contends that he was "ushered out of court without the opportunity of any presentation of testimony or trial of the issues." Brief of Appellant at 1.

PROPOSITION I

DID THE CIRCUIT COURT ERR IN IGNORING THE ELEMENT OF PUBLIC NUISANCE IN THE COMPLAINT
In McKay's Brief he states the following:
While it did not come to McKay's counsel['s] attention in the first filing of their complaint until well into argument in the 5th Circuit in New Orleans in 1985, the scrivener in Mendenhall left out the word public nuisance as it pertained to the alleged substandard bridge while otherwise describing its shortcomings. It was not until opposing counsel remarked that plaintiffs did a good job of disguising it that its insertion was lacking at that point. However, [p]ublic [n]uisance was pleaded in the Motion to Amend Complaint under date of December 24, 1985 in Simpson County which somehow apparently got lost as per the statement of Judge Barber at the conference for the attorneys in December 1986.
(Brief of Appellant 1-2).
Although McKay insists that his case may be one of first impression, it is clear that some discussion of the doctrine of sovereign immunity is appropriate. Contrary to what McKay asserts, the ensuing discussion reveals that this aspect of the case sub judice is not one of first impression.

A Discussion of the law of Sovereign Immunity
Without doubt the doctrine of sovereign immunity has to apply in this case. Although this Court abolished this doctrine in Pruett v. City of Rosedale, 421 So.2d 1046 (Miss. 1982)  effective July 1, 1984, it is still firmly entrenched in our law. This is not so because of any action of this Court, but because the legislature responded to Pruett by enacting the "Sovereign Immunity Act of 1984." See Ch. 495, 1984 Miss. Laws. Now codified as Miss. Code Ann. § 11-46-1, et seq. (Supp. 1990), the legislature has reenacted annually this statute which provides in pertinent part:
[A]s a matter of public policy ... after July 1, 1991, the "state"[3] and, ... October 1, 1991 its "political subdivisions" ... shall not be liable and shall be immune from suit ... on account of any wrongful or tortious act or omission ... Notwithstanding that any such act or omission constitutes or may be considered as the exercise or failure to exercise any duty, obligation or function of a governmental, proprietary, discretionary or ministerial nature ...
Miss. Code Ann. § 11-46-3 (Supp. 1990); see also McFadden v. State, 542 So.2d 871, 876-77, n. 2 (Miss. 1989). The Immunity Act also provides a waiver of immunity after July 1, 1991, for states and after October 1, 1991, for political subdivisions. Miss. Code Ann. § 11-46-5(1) (Supp. 1990). But, claims, as to the state, which accrued prior to July 1, 1991 and after October 1, 1991 as to political subdivisions are not affected by this statute and "are governed by the case law governing sovereign immunity *920 as it existed immediately prior to the decision ... of Pruett." Miss. Code Ann. § 11-46-6 (Supp. 1990). Consequently, the holding in Pruett has never come into effect. Webb v. County of Lincoln, 536 So.2d 1356, 1358 (Miss. 1988). And, "the state, and its political subdivisions ... have continuously remained protected from suit under the doctrine of sovereign immunity as it existed prior to [the Pruett decision]." Richardson v. Rankin County School District, 540 So.2d 5, 8 (Miss. 1989).
Since this case arises out of an accident which occurred on June 15, 1967, pre-Pruett law governs, and "all claims of tort liability against state agencies are barred by the doctrine of sovereign immunity absent statutory authority to the contrary." Joseph v. Tennessee Partners, Inc., 501 So.2d 371, 374 (Miss. 1987); see also White v. City of Tupelo, 462 So.2d 707 (Miss. 1984) (since this cause of action accrued on October 13, 1980, we must analyze pre-Pruett decisions to determine whether the lower court properly applied the doctrine of sovereign immunity in this case); Marshall v. Chawla, 520 So.2d 1374, 1375 (Miss. 1988) (causes accruing before July 1, 1984 are governed by the traditional common law immunities); and Region VII, Mental Health v. Isaac, 523 So.2d 1013, 1015 (Miss. 1988) (same). We, therefore, briefly turn to some pre-Pruett cases.
One of the earlier cases we must look to is Stewart v. State Highway Commission, 166 Miss. 43, 148 So. 218 (1933). In that case, this Court relied on a prior case, State Highway Commission v. Gulley, 167 Miss. 631, 145 So. 351 (1933), which held that the highway commission is an official agency of the state; consequently, it is not subject to suit. Id. at 647, 145 So. at 354. Gulley construed Chapter 122, Section 5006(c) of the Miss.Code 1930[4] and concluded that the general statutory grant of authority to sue the commission does not create any liability or authorize suit against it for any liability not authorized by statute, either expressly or by necessary implication. Id. Thus, in Stewart, where the appellant was suing the highway commission for personal injuries sustained as a result negligence by an employee of the commission, this Court concluded that "the general statutory grant of authority to sue the [highway] commission does not impose liability for the negligence of its officers, agents, or employees, and there is no other statue imposing such liability." 166 Miss. at 49, 148 So. at 219.
In a more recent case, Karpovs v. State, 663 F.2d 640 (5th Cir.1981), the Fifth Circuit Court of Appeals held that a suit for wrongful death filed against the highway commission was barred by sovereign immunity. Id. at 646. In its opinion the court explicitly relied on Stewart, supra, and Gulley, supra, and concluded that "[w]e are cited to no statute, and independent research reveals no authority that imposes liability on the MSHC... ." Id. Likewise, in the case, sub judice, McKay has failed to provide that statute or other authority which imposes liability. Moreover, that sovereign immunity still exists for the Highway Commission was reaffirmed recently in Webb, 536 So.2d at 1359.[5]
McKay next asserts that his claim is different because it alleges more than negligence. Specifically his complaint is "grounded in public nuisance, a concept rather universally accepted as a cause of action ... that transcends the tradition[a]l notions of "sovereign immunity" which the Pruett case found to be unjust." (Brief of Appellant at 2). In support of this position, McKay relies on the following language:
Although the courts have sometimes spoken interchangeably about the tort concepts of negligence and nuisance, the terms are not synonymous, but describe completely distinct concepts, which constitute distinct torts, different in their nature and in their consequences ... [N]uisance is the invasion of plaintiff's interest in the reasonable use and enjoyment *921 of his land, which invasion can be caused by conduct of a defendant which is either intentional, negligent, reckless, or ultrahazardous.
... [Nuisance and negligence] may be, and frequently are, coexisting and practically inseparable, as where acts or omissions constituting negligence also give rise to a nuisance ...
The distinction between negligence and nuisance is of some importance with regard to the question of liability of owners or occupants of property for injuries created by reason of defects or hazards on the property or by activities of owners or occupants or their servants or employees.
* * * * * *
... [W]hile negligence has sometimes been defined as the failure to exercise the degree of care demanded by the circumstances, a defendant's failure to act reasonably, which is an essential element of negligence, is simply not relevant to a determination of nuisance; liability for nuisance, unlike liability for negligence, exists regardless of the degree of care exercised to avoid injury. The creation or maintenance of a nuisance is a violation of an absolute duty, the doing of an act which is wrongful in itself, whereas negligence is a violation of a relative duty, the failure to use the degree of care required under particular circumstances in connection with an act or omission which is not of itself wrongful.
At time it is said that to constitute a nuisance there must be a degree of danger which is likely to result in damage inherent in the thing itself, beyond that arising from the mere failure to exercise ordinary care in its use.
* * * * * *
Nuisance is a condition and not an act or failure to act... . In short, as distinguished from negligence liability, liability in nuisance is predicated upon an unreasonable injury rather than upon unreasonable conduct.
58 AM.JUR.2d NUISANCES §§ 9-11, pp. 676-78 (1989).
Another section of this legal encyclopedia, to which McKay failed to cite, provides that
[i]t has been said that an act cannot be a nuisance if it is lawful, and that, although it otherwise would be a nuisance, the doing of that which the law authorizes cannot be a nuisance... . However, in general, legality is not conclusive on the issue of whether a nuisance exists, the fact that an act may otherwise be lawful does not necessarily prevent it from constituting a nuisance, either public or private, which result has, in some instances, been expressly mandated by statute.
58 AM.JUR.2d NUISANCES § 462, p. 1032 (1989).
There is also useful language from a separate volume, which provides the following:
There is a general agreement upon the proposition that any permanent, fixed, or stationary object or impediment, as distinguished from a mere temporary obstruction incidental to a lawful use of the way, which unreasonably and unnecessarily interferes with public travel, or which endangers the safety of travelers, constitutes a public nuisance per se.... It follows from the foregoing statements that an obstruction may be a nuisance although it occupies only a part of the way and sufficient space still remains to accommodate public travel, or although it is outside the traveled or worked part of the way, or even though it is in fact a thing of public convenience or benefit.
A necessary corollary of the foregoing statement of general rules is that an obstruction made in the proper exercise of a proprietary right or pursuant to due public authorization, and maintained in a proper condition, is not regarded as a nuisance. However, one invoking the protection of such authorization must show that he acted strictly within the authority conferred, and where an authorization to obstruct the public way is exercised in an improper manner, the obstruction becomes a nuisance of a kind which arises out of negligence.
*922 39 AM.JUR.2d HIGHWAYS, STREETS, AND BRIDGES, § 274, pp. 661-62 (1968) (emphasis added).
In addition to the above language, the RESTATEMENT (SECOND) OF TORTS § 821B, comment f (1979) provides that if conduct, that ordinarily would be a nuisance at common law, is fully "authorized by statute, ordinance or administrative regulation [it] does not subject the actor to tort liability;" see also Harper, James & Gray, The Law of Torts § 29.4, p. 609-11 (In the absence of statute or constitutional provision it is doubtful whether the state is liable for the creation or maintenance of a condition that would be a nuisance if a private person created or maintained it) (emphasis added).
Undoubtedly the Highway Commission has the duty and authority in the control and supervision of the construction and maintenance of the highway system. See, MISS. CODE ANN. § 65-1-8 (Supp. 1990). This obviously includes the construction of bridges along the state's highways.
Still, McKay insists that Mississippi case law supports his public nuisance contention. For this proposition he relies on United Gas Pipe Line Co. v. Jones, 236 Miss. 471, 111 So.2d 240 (1959). In that particular case, the facts detail an accident on one of the state's highways. A father allowed his fourteen year old son to drive his car, and in turn, the son permitted one of his friends to drive the car. Id. at 484-85, 111 So.2d 240. The friend, who had been driving 90 mph, entered a curve and while slowing down, the car left the road and hit a concrete post, which was 3 to 3 1/2 feet from the road.[6]Id. at 485, 487, 489, 111 So.2d 240. At the conclusion of the evidence, the jury found several defendants liable for injuries that the plaintiff suffered. The pipe line company appealed claiming that it was entitled to a directed verdict. Id. at 483, 111 So.2d 240.
In reaching the conclusion that the pipe line company was not entitled to a directed verdict, the court made the following announcements, which McKay relies:
Highway officers have no power to surrender the use of the highway for private purposes, or to authorize a nuisance on the highway. If the public authorities, in authorizing an obstruction, exceed their powers, such obstruction will be illegal ...
Any unauthorized obstruction which unnecessarily impedes or incommodes the lawful use of a highway is a public nuisance at common law... .
Even though the entire width of a highway is not prepared for travel, or although a bridge or culvert does not extend to its entire width, the public rights of passage are not thereby limited in favor of one who places an unauthorized or improper structure within the highway limits, nor is the latter relieved from liability for injuries resulting therefrom by reason of the fact that such obstruction is outside of the traveled way... .
One is not justified in obstructing a highway because he leaves sufficient room for the passage of the public. An obstruction placed anywhere within the highway limits, although outside of the traveled part, may constitute a nuisance. The same is true of any object placed close to the roadway, constituting a present source of danger ...
Id. at 496-97, 111 So.2d 240 (citations omitted).
Clearly the most distinguishing point in that case, when comparing it to the case sub judice is that there the parties were not suing the state. The question in that case was narrowly focused and limited to whether the pipe line company was entitled to a peremptory instruction. With this in mind, it was appropriate for the trial court to dismiss the action against the State Highway Commission because it was cloaked with the doctrine of sovereign immunity and could not be sued.
*923 Now, we turn our attention to the assignments that relate to Boyd.

PROPOSITION II

DID THE TRIAL COURT ERR IN DISMISSING CONTRACTOR BOYD?
McKay asserts that the trial court erred in granting summary judgment in favor of Boyd. In his complaint filed on December 2, 1983, McKay alleged that the defendants "were responsible for building a roadway and bridge over the [Strong] River [on U.S. Highway 49] and that the abutments were constructed in the public right of way ... [and the] abutment was located approximately 23 inches from the traversed portion of the said roadway." McKay also alleged that the paved portion of the southbound lane of the highway was negligently constructed for it was unduly pitched to the left which tended to cause vehicles using the area to drift leftward toward the bridge abutment. According to McKay, it was because of this faulty construction that the accident occurred.
McKay made other claims as well. He maintained that the defendants were violative of the rules and regulations promulgated by the United States government. In particular, the defendants failed to provide guardrails to prevent head-on contact with abutments in the right of way. Finally, McKay asserted that the defendants knew or should have known that their disregard for minimal safety standards would create substantial risk or harm for persons such as himself.
Boyd's answer to this complaint, filed on January 10, 1984, alleged that McKay failed to state a claim for which relief could be granted, and the claim was barred by the statute of limitations. Boyd's third defense maintained that "its only involvement in the construction in question included construction of bridges, overpasses, paving of overpasses and common excavation of the roadbed." Moreover, Boyd also indicated that it "had no obligation under its contract, nor was it involved in the design of the bridge or roadway, or in the paving of the roadway." Finally, Boyd asserts that it was in no manner involved in any circumstances which produced McKay's accident.
As has been outlined in the Course of Proceedings, supra, pp. 1-4, this case was shuffled through several courts. On October 30, 1985, Boyd filed its motion for summary judgment. He followed this motion with an affidavit and a brief in support of the motion. The brief was filed on January 13, 1986. In the supporting affidavit, the president of Boyd stated that it entered into a contract with the highway commission on March 14, 1962, to do some clearing and grubbing, construction of the Strong River bridges and construction of overpasses. The affiant also indicated that Boyd had "no part in the design and specification stage of the planning and was only allowed ... to bid on the project as designed and approved by the Mississippi Highway Commission and Federal Bureau of Roads." Moreover, Boyd had no control or authority over the design and location of the bridge, including the abutments and its work was performed under close, strict supervision by the State and federal inspectors.
The state did not pay Boyd for its services until inspections were conducted by state and federal authorities, and written approval had been given. After Boyd completed the common excavation, the state entered a new contract with another contractor for paving. The paving contractor had to reshape all excavations before they began the approximate two (2) feet of fill prior to commencing the actual paving work. Moreover, the paving was not completed and made ready for traffic until two years later. Additionally, Boyd was not responsible for constructing the guardrails. After Boyd completed its contract, the state and federal authorities conducted a final inspection. Finally, in 1963, Boyd was given a full, final release from all liability under the contracts as well as from all public liability.
In response to this affidavit, McKay submitted two affidavits. The first was from Henry L. Munch, a president of a construction company in Wisconsin. He has over thirty years experience in the field and his *924 firm has been constructing federal, state, county and local roads in the Wisconsin area since 1957. The affiant stated that he had reviewed the appropriate guidelines applicable for the period when the Strong River Bridge was constructed, and he refuted the assertion in Boyd's affidavit that the bridge in question without guardrails on the end and located within 23 inches of the roadway were proper.
The second affidavit was provided by Kenneth C. Kloiber, an engineer from Wisconsin with approximately thirty years experience. He stated no more than Munch's affidavit, and his affidavit was "prepared to refute the contention that the bridge in question over the Strong River ... was built within the AASHO guidelines as set forth by the opposition."
Based on these affidavits the trial judge granted this summary judgment motion finding as a matter of law that no genuine issues of material fact existed. No issues existed because Boyd had received a full, final release.

DISCUSSION OF THE LAW
Just recently this Court provided the following discussion of summary judgment:
In determining whether the trial court was proper in granting [a] Motion for Summary Judgment, we must conduct de novo review.
The law governing the grant or denial of a motion for summary judgment is well established, [as this Court] has explained repeatedly:
The trial court must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.
Issues of facts sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter in issue and another says the opposite.

Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984). See also, Allison [v. State Farm Fire & Casualty Company], 543 So.2d [661] at 663 [(Miss. 1989)]; [Clark v.] Moore Memorial, 538 So.2d [760] at 762 [(Miss. 1989)]; Short v. Columbus Rubber & Gasket Co., 535 So.2d 61, 63 (Miss. 1988); and Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983).
The movant is strapped with the burden of demonstrating that no genuine issue of fact exists while the non-movant is given the benefit of every reasonable doubt. By the same token, however, the non-movant cannot just sit back and remain silent, but he must rebut by producing significant probative evidence showing that there are indeed genuine issues for trial. The non-movant, in generating an issue of fact sufficient to avoid an adverse rendering of summary judgment, cannot rely soley [sic] on his pleadings, which simply allege or deny a material fact. But, he must present `by affidavit or other wise set forth specific facts showing that there are indeed genuine issues for trial.' Stated another way, the non-movant must bring forward `significant probative evidence demonstrating the existence of a triable issue of fact.'
Newell v. Hinton, 556 So.2d 1037, 1041 (Miss. 1990) (citations omitted); McMichael v. Nu-Way Steel and Supply, Inc., 563 So.2d 1371, 1374-75 (Miss. 1990). For a more recent discussion of summary judgment procedure see Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1355-6 (Miss. 1990).

It was proper for the trial court to grant Boyd's motion
There are several reasons why the trial court acted properly in granting summary judgment in Boyd's favor. After Boyd moved for summary judgment and presented its evidence, it was McKay's duty to rebut by providing significant and probative evidence, which demonstrated that *925 there were genuine issues of material fact that necessitated a trial. He chose to provide two affidavits for this purpose. One of the affidavits asserts that the bridge was improperly constructed because there were no guardrails. The other affidavit insists that the bridge was improperly constructed because it only had a twenty-three inch clearance.
Notwithstanding the fact that Boyd had nothing to do with the design, planning or specification of the project, its work was approved and accepted by the highway commission. Moreover, based upon its inspections, the highway commission provided a full and final release from liability to Boyd.[7] Although McKay asserts that the paved portion around the bridge was done in a negligent manner, this is not a consequential fact because Boyd was not responsible for the paving work. There was a second contract for paving the surface, and Boyd was not hired to do this work. In addition, the paving was not completed and made ready for traffic until two years after Boyd had been released by the Mississippi Highway Commission.
And, finally McKay's second affidavit indicates that the bridge was negligently constructed because there were no guardrails. Here again the affidavit does not deal with a material fact. Whether the bridge had the guardrails is inconsequential because Boyd completed the work it was hired to do, and it completed them according to the specifications. As this Court stated in Holmes v. T.M. Strider & Co., 186 Miss. 380, 189 So. 518 (1939):
[A]fter the contractor has turned the work over and it has been accepted by a public board or a commission as satisfactory, the contractor incurs no further liability to third parties, by reason of the condition of the work, and that the responsibility, if any, for maintaining or using it in its defective condition, is shifted to the public board or commission, This rule, however, is subject to some qualifications, among them the cases where the work is a nuisance per se, or where it is turned over by the contractor in a manner so negligently defective as to be imminently dangerous to third persons.

Id. at 397, 189 So. 518. (emphasis in original). In the case sub judice there is no indication that Boyd turned over its work in a negligent manner. Because Boyd followed the guidelines and specifications provided by the highway commission it is entitled to immunity so long as it did its job in an non-negligent manner. See generally Annotation, Right of Contractor with Federal, State, or Local Public Body to Latter's Immunity from Tort Liability, 9 A.L.R.3d 382.[8]
After reviewing the facts that are on the table in the case sub judice, we find that the trial court properly found that there *926 was no genuine issue of material fact and Boyd was entitled to judgment as a matter of law. See, Palmer, 564 So.2d at 1355. Boyd completed the work according to specifications provided by the government. Moreover, its work passed state and federal inspections. And, finally, Boyd obtained a full and final release from the Highway Commission. Based on the facts in this case, Boyd was entitled to the same protection given to the Highway Commission in this suit for negligence and the creation of a nuisance.
We, therefore, affirm.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and PRATHER, ROBERTSON, SULLIVAN and BLASS, JJ., concur.
DAN M. LEE, P.J., concurs in part and dissents in part.
PITTMAN, J., not participating.
NOTES
[1] The original complaint only included the Highway Department, but the complaint was later amended to include the Mississippi State Highway Commission.
[2] His Guardian is an older brother.
[3] "State" means the state of Mississippi and any office, department, agency, division ... whether or not such body or instrumentality thereof has the authority to levy taxes or to sue or be sued in its own name. Therefore, Mississippi Highway Commission is the State. See Miss. Code Ann. § 11-46-1(e) (Supp. 1990).
[4] This is a predecessor to what is now codified at Miss. Code Ann. § 65-1-8(b) (Supp. 1990).
[5] Specifically, we denied the appellants' claim against the Highway Commission because sovereign immunity still exists. Id.
[6] This post had been erected by the gas company, and testimony indicated that it was a hazard. Id. at 489, 492, 111 So.2d 240.
[7] Cf. Phifer v. T.L. James & Co., Inc., 513 F.2d 323 (5th Cir.1975) (per curiam) (a contractor's duty to maintain a a road ceases when the county engineers accept the construction and certify it for payment) citing Williams v. Sullivan, Long & Hagerty, Inc., 209 So.2d 618 (Miss. 1968). For an analogous case see Curtis v. Mississippi State Highway Commission, 195 So.2d 497 (Miss. 1967). In that case this Court held that a contractor who engages in the construction of a public improvement and does so in a non-negligent manner according to the specifications given by a public agency, it is not liable even though the state agency furnishing those plans and specifications is held accountable under the theory of damage to or the taking of private property without just compensation.
[8] We, like our sister court in the federal system, are "impressed by the widespread acceptance of the government contractor defense throughout the nation." Bynum v. General Motors Corp., 599 F. Supp. 155 (N.D.Miss. 1984), aff'd sub nom. Bynum v. FMC Corp., 770 F.2d 556 (5th Cir.1985). In addition, the Pennsylvania Supreme Court has provided this discussion of the defense:

In every jurisdiction in this Country where the question has been passed upon (and that includes the Supreme Court of the United States, other Federal courts and courts of approximately half of the States), it has been uniformly held that in the absence of negligence or wilfully tortious conduct on the part of an independent contractor, he is not liable for injury to another's property which is caused by the performance of his contract with a governmental instrumentality in accordance with it plans and specifications... .
Valley Forge Gardens, Inc. v. James D. Morrisey, Inc., 385 Pa. 477, 123 A.2d 888, 890 (1956). Accord Meier v. Frank Mashuda Co., 10 Ohio Op.2d 454, 168 N.E.2d 319 (1959).