# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 96-CA-00662-COA

PAMELA GAIL CARRINGTON, PERSONAL                              APPELLANT
REPRESENTATIVE OF THE WRONGFUL DEATH
BENEFICIARIES OF JAMES WILEY
CARRINGTON, III, DECEASED

v.

METHODIST MEDICAL CENTER, INC.                               APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND MAY NOT BE CITED,
PURSUANT TO M.R.A.P. 35-B

| | |
|---|---|
| DATE OF JUDGMENT: | APRIL 25, 1996 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES, JR. |
| COURT FROM WHICH APPEALED: | CIRCUIT COURT OF HINDS COUNTY |
| ATTORNEYS FOR APPELLANT: | JOHN GRAHAM HOLADAY |
| | SHANE F. LANGSTON |
| ATTORNEYS FOR APPELLEE: | RANDALL D. NOEL |
| | HEBER S. SIMMONS, III |
| | DOUGLAS T. MIRACLE |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| TRIAL COURT DISPOSITION: | SUMMARY JUDGMENT FOR DEFENDANT |
| DISPOSITION: | AFFIRMED - 12/16/97 |
| MOTION FOR REHEARING FILED: | 12/31/97 |
| CERTIORARI FILED: | 3/25/98 |
| MANDATE ISSUED: | |

BEFORE McMILLIN, P.J., HINKEBEIN, AND SOUTHWICK, JJ.

McMILLIN, P.J., FOR THE COURT:

This case comes before the Court on appeal from a grant of summary judgment in favor of the defendant, Methodist Medical Center, Inc., in a wrongful death suit filed on behalf of the statutory wrongful death beneficiaries of James Wiley Carrington, III, deceased. The suit was filed in the Circuit Court of Hinds County. This Court affirms the decision of the trial court.

# I.

## Facts

Carrington was involuntarily committed for psychiatric care to the Mississippi State Hospital under the provisions of Mississippi's laws dealing with persons in need of mental treatment. Pending the availability of a place for Carrington at the state hospital, he was temporarily institutionalized at Methodist Medical Center pursuant to an existing general contract between Methodist and Hinds County. This contractual service was provided by Methodist to avoid having to temporarily confine mental patients in jail until space was available at the state hospital. The order of commitment entered by the Hinds County Chancery Court specifically authorized Carrington's temporary hospitalization at Methodist.

During the time of his confinement, Carrington committed suicide by hanging himself. This wrongful death suit was filed by Carrington's wrongful death beneficiaries alleging that Methodist breached the standard of care for a health care institution by failing to properly observe and care for Carrington when Methodist was on notice of his suicidal tendencies.

In their claim against Methodist, the plaintiffs relied partly on the standing hospital orders for all patients temporarily committed to Methodist under its contract with the county. These orders required personnel to "[o]bserve patient at all times with vital signs daily." The hospital records indicated that a period of approximately thirty minutes passed between the last recorded observation of Carrington by nursing personnel and the time it was discovered that he was no longer in his room.

Minutes later, he was found unconscious in his bathroom, and attempts to revive him were unsuccessful.

To further demonstrate Methodist's negligence, the plaintiffs also relied upon an excerpt from an edition of the hospital's newsletter which stated that Methodist's facilities were not adequate "for treating patients with psychiatric disorders where there is a possibility of the patient harming either himself or others." The newsletter was issued in late 1992, over one year prior to Carrington's suicide.

Little other evidence was presented by the plaintiffs in opposition to Methodist's summary judgment motion.

# II.

## Discussion

Methodist was granted summary judgment under the provisions of a statute granting limited immunity to entities participating in the statutory involuntary commitment process. Section 41-21-105 of the Mississippi Code of 1972 provides as follows:

> (1) All persons acting in good faith in connection with the preparation or execution of applications, affidavits, certificates or other documents; apprehension; findings; determinations; opinions of physicians and psychologists; transportation; examination; treatment; emergency treatment; detention or discharge of an individual, under the provisions of sections 41-21-61 to

41-21-107, shall incur no liability, civil or criminal, for such acts.

(2) No civil suit of any kind whatsoever shall be brought or prosecuted against the board, any member thereof, any director or employee for acts committed within the scope of their employment, except for wilful or malicious acts or acts of gross negligence.

**Miss. Code Ann. § 41-21-105 (1993).**

The trial court determined that there was no legitimate issue of fact as to whether Methodist had been proceeding in anything other than good faith in its dealings with Carrington. The court further concluded that there was nothing before it that would support a finding that any of Methodist's agents or employees had acted wilfully, maliciously, or in a grossly negligent manner. Thus, the trial court held that, as a matter of law, Methodist was entitled to the limited immunity of Section 41-21-105, and granted summary judgment on that basis. It is from that ruling that Carrington's survivors have perfected this appeal.

Our review in such matters is *de novo*. *Collier v. Trustmark National Bank*, **678 So. 2d 693, 695 (Miss. 1996)** (citing *Downs v. Choo*, 656 So. 2d 84, 85 (Miss. 1995)). We afford no deference to the trial court's decision. Instead, we are required to consider the matter afresh, looking at the same information available to the trial court. Only if we conclude, based upon our independent review of the entire record, that summary judgment was in order may we affirm the trial court.

There is essentially no dispute between the parties as to the operative facts. Nevertheless, in those instances where uncontested facts are capable of producing competing conclusions, at least one of which is consistent with liability, then summary judgment is improper. *See Presswood v. Cook*, **658 So. 2d 859, 862 (Miss. 1995)**; *Strantz v. Pinion*, **652 So. 2d 738, 741 (Miss. 1995)**. The appellants contend that the uncontested facts of this case are capable of differing interpretations and that a jury might reasonably conclude that (a) the failure to more closely monitor Carrington, in light of his known suicidal tendencies, constituted gross negligence; or (b) the willingness of Methodist to take on mentally disturbed patients in view of its previously-stated unpreparedness to properly care for such patients was a wilful disregard of its obligation to Carrington. In either event, it is urged that, if the jury should so conclude, Methodist would lose the limited immunity provided by the statute and be open to a claim for wrongful death damages.

In a summary judgment proceeding, the non-movant -- the plaintiff in this instance -- may not rest on the allegations in the pleadings, but has an obligation to come forward with evidence to establish that facts exist which, if proved to the satisfaction of the fact-finder, would permit the plaintiff to recover under his theory of the case. *See Foster v. Bass*, **575 So. 2d 967, 983 (Miss. 1990)**; *McKay v. Boyd Construction Company, Inc.*, **571 So. 2d 916, 924 (Miss. 1990)**; *McMichael v. Nu-Way Steel and Supply, Inc.*, **563 So. 2d 1371, 1375 (Miss. 1990)**; *Newell v. Hinton*, **556 So. 2d 1037, 1041-42 (Miss. 1990).** In this instance, we do not deal with a simple negligence case where it is alleged that an institutional caretaker, acting through its agents, has breached the standard of care applicable to such health provider organizations. Rather, the Mississippi Legislature has imposed a higher burden on the plaintiff in the limited circumstance where such services are being provided in connection with a legally-mandated confinement for mental treatment. In these situations, recovery can only be had upon a showing of wilful, malicious, or grossly negligent acts. **Miss. Code Ann. § 41-21-105(b)**

**(1993).** Thus, cases relied upon by Carrington's survivors, dealing generally with the standard of care of health service providers to their patients, are not applicable in this instance. Had this been a voluntary hospitalization arranged between Methodist and Carrington or Carrington's family, those cases cited in the appellant's brief might have some application; however, we are dealing with a different situation in this case. We must, therefore, consider such evidence as the appellants presented in opposition to the summary judgment motion in the light of the higher burden placed by the legislature on their right of recovery. As we observed earlier, the Carrington beneficiaries relied primarily on two factual assertions to establish liability.

## A.

### The Standing Orders

This Court is not convinced that Methodist's alleged failure to provide a 24-hour suicide watch for Carrington, based on the wording of the standing hospital orders for such patients, is sufficient to create a jury issue on the question of gross negligence. The standing orders pertaining to temporary, involuntarily committed patients emphasize the necessity to provide a constant monitoring of such patients; however, only a strained reading of the orders would require such a patient to be within sight of a hospital employee at all times. The resulting difficulty inherently associated with providing a 24-hour attendant for every involuntarily committed patient suggests that such a literal reading of the orders is not what was intended by the contracting parties. The record is uncontroverted that Carrington was being monitored with a high degree of frequency. The fact that Carrington took advantage of the privacy between periodic observations to secrete himself in the bathroom and end his life is unfortunate. However, Carrington's heirs present no facts that would permit a jury to reasonably conclude that Carrington's propensity to self-destruction was so great that he required constant, around-the-clock, monitoring, even at such times as he tended to his bodily needs in the bathroom. Moreover, Carrington's survivors did not present the Court with any expert opinion evidence that would support a rational finding that Methodist's course of conduct was grossly negligent within the meaning of section 41-21-105(2).

## B.

### The Hospital Newsletter

This Court concludes that the previously-issued newsletter by Methodist commenting on its unpreparedness to accept mentally ill patients in its then-existing configuration has little application to this case. Those comments appear to have been addressed to the concept of Methodist taking on such patients and committing to a full course of necessary treatment of the mental disorders of these patients. In the instant case, Methodist was providing temporary hospitalization of involuntarily committed mental patients pending the availability of space for the patient at the appropriate state facility -- a substantially different service. It was not envisioned that Methodist would become the primary care-giving institution to these patients. Thus, Methodist's perceived unpreparedness to commit to a full course of treatment for a mentally ill patient does not, in and of itself, appear to offer evidence that the institution was incapable of providing reasonable temporary care to involuntarily confined mental patients awaiting transfer to the state hospital.

This Court is satisfied that Carrington's wrongful death beneficiaries have failed to present evidence

sufficient to establish that a legitimate issue of fact exists as to whether the conduct of Methodist's employees in this situation rose to the level of being fairly characterized as wilful, malicious, or grossly negligent. In the absence of such proof, we conclude, as did the trial court, that Methodist was entitled to judgment as a matter of law. Summary judgment was properly entered and, therefore, the judgment of the trial court is affirmed.

**THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**THOMAS, P.J., COLEMAN, HERRING, HINKEBEIN, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR. DIAZ, J., DISSENTS WITH SEPARATE WRITTEN OPINION. BRIDGES, C.J., NOT PARTICIPATING.**

DIAZ, J., DISSENTING:

I respectfully dissent from the majority opinion. Summary judgment is a powerful tool which "should be used wisely and sparingly." *Martin v. Simmons*, **571 So. 2d 254, 258 (Miss. 1990).** It should only be granted when "there is no genuine issue as to any material fact." M.R.C.P. 56(c). The trial judge in the case at bar failed to consider that perhaps a legitimate issue of fact did exist as to whether Methodist had breached its duty to Carrington. It is for this reason that "[w]e urge caution in the granting of summary judgment." *Martin*, **571 So. 2d at 258.** I would direct the trial court to allow Carrington's heirs the opportunity to put forth evidence in support of their claim.